UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


CONAGRA FOODS, INC.                    )
                                       )
V.                                     )          NO. 2:10-CV-76
                                       )
UNITED STEEL, PAPER, *ETC*.            )


## REPORT AND RECOMMENDATION

This suit was filed to vacate the Opinion and Award of an arbitrator. Both parties
have filed motions for summary judgment. (Docs. 16, 18). The parties' respective motions
have been referred to the magistrate judge for a report and recommendation pursuant to 28
U.S.C. § 636.[1]

The plaintiff, ConAgra Foods, Inc., ("ConAgra"), has a canning facility in Newport,
Tennessee, in which it manufactures various food products. It employs four hundred or more
employees, one of whom was James Cheek.

The ConAgra employees are represented by Local 7198 of the defendant labor union
("United Steel"). ConAgra and United Steel entered into a Collective Bargaining Agreement
("CBA") that is germane to the resolution of the two motions for summary judgment. Article
V of the CBA provides that: "[t]he management of the plant and the direction of the working
forces, including the right to hire, suspend, or discharge for just cause . . . are vested

---

[1]Doc. 27.

exclusively in the Company . . . ."

Under Article VI of the CBA, ConAgra and the Steelworkers agreed to submit their disputes to arbitration, and the Arbitrator was "empowered to rule on all disputes pertaining to the interpretation or application of [the CBA], provided however, that he shall have no power to add to, subtract from, nor modify any terms of [the CBA] nor any agreement made supplementary hereto."

Under Article XX of the CBA, ConAgra reserved "the right to make and publish reasonable rules," a violation of which "shall constitute reason for discipline, suspension, or dismissal."

The pertinent portions of the Rules and Regulations promulgated pursuant to Article XX of the CBA are:

> The orderly and efficient operation of the plant requires that employees maintain discipline and proper personal standards of conduct at all time. Employees who fail to maintain proper standards of conduct and/or violate any of the following shall subject themselves to disciplinary action including discharge:
>
>         * * *
>
> (5) Falsifying any reports for records or claims against the Company, including personnel, absence, sickness, injury, or production records.
>
>         * * *
>
> (13) Failing to properly notify their Supervisor of any absence or lateness in advance, and provide good reason.
>
>         * * *
>
> (15) Acting disorderly, immorally or indecently. Profane or abusive language is not permitted.

On April 10, 2009, ConAgra terminated Mr. Cheek's employment on the basis that he violated Rules 5 and 13 of the Rules and Regulations because he had been absent from his work assignment "for extended periods of time while being paid for hours worked."

*FACTS*

The facts relevant to the disposition of these motions appear in the Arbitrator's Opinion and Award:[2]

> \* \* \*
>
> 3.   Mr. James Cheek (hereinafter sometimes referred to as the "Grievant") is a tank farm attendant.  There are nine tanks.  He is on the second shift, i.e., 2:00 p.m. to 10:00 p.m.
>
> 4.   Mr. Travis Kapusta was the interim plant manager.  He was concerned in early 2009. [sic].  A vice president was coming to visit the plant.  He wanted the facility to look as good as possible.  He asked Mr. Robert Miller, the maintenance manager, and two other supervisors to inspect the plant  -- including the tank farm.  The would look for leaks, debris, cleanliness, etc.
>
> 5.  The three supervisors discovered some disturbing items at the tank farm.  They found pornographic material in a locker.  They found women's panties.  They found condoms.  They found various and sundry sexually explicit pictures, calendars, etc.  Mr. Cheek's name and mailing address was on some of it.  They found a make shift bed and a refrigerator.  They found bank statements.  They confiscated this material.  The Grievant was suspended.  He apologized for the pornography.
>
> 6.  During this process, someone suggested that management should talk to the guards.  They did so.  The guards are employed by Securitas.  The Company has subcontracted its security needs to this entity.
>
> 7.   There are two guards on the 2-10 shift.  They would see Mr. Cheek about every work day.  He would visit the guard shack.  The employees have two fifteen minute breaks and a thirty minute lunch

---

[2]Doc. 1-4; J.R. 148.

period during an eight hour shift. The Grievant would hang out for twenty-thirty minutes. Sometimes, he would leave the premises for one and one-half to two hours. It could be as much as three hours. It occurred about two or three times per week. Normally, he did not use the turnstile. It was record his actions. He would use the truck entrance as he left on his motorcycle. On occasion, he would leave his radio with the guards. He asked them to call him on his cell phone if anyone needed him.

8. The guards reported this activity to their superior. They don't know if he mentioned it to a ConAgra executive.

9. The employer concluded that Mr. Cheek was stealing time. He was not working. He was being paid. But, he was not even on the property. Mr. Kapusta terminated the Grievant on April 10, 2009.

After noting that ConAgra had the right to discharge employees, the Arbitrator pointed out that the termination could be only for "just cause." He then launches into a most remarkable discussion regarding Mr. Cheek's actions, *vis a vis* "just cause:"

There can't be any doubt about it. [Mr. Cheek] was stealing time.[3]

ConAgra was not paying [Mr. Cheek] for riding his motorcycle up and down the highway.[4]

The allegation involving pornography and other questionable conduct is not really relevant [since] Mr. Kapusta testified that the dismissal was not based on this item.[5]

[United Steelworkers] did not proffer any evidence to deny or explain these absences from the plant.[6]

*There are some mitigating factors. The first one is the lax*

---

[3]Doc. 1-4, p. 4.

[4] *Id.*

[5] *Id.*

[6]*Id.*

*supervision. There isn't any evidence that any supervisor was aware of any of these deficiencies. No one ever came around. [Mr. Cheek] wasn't being supervised. It is almost as if he was in business for himself. A casual inspection by a supervisor on some sort of a periodic basis would have uncovered the pornography and the absences. But, there wasn't any. The Company seems to be quite lackadaisical.[7]*

[N]o one ever told [Mr. Cheek] to cease and desist from these improper absences during his shift. He was never warned about his conduct.[8]

*Lastly, it must be noted that there wasn't any complaint about the quality of [Mr. Cheek's] work. There wasn't any accident, spill or other emergency while he was reading pornography or out of the plant. there isn't any evidence of any discipline in his file. In short, up to the date of his discharge, he was at least an average employee.[9]*

The totality of the evidence leads to the conclusion that there wasn't just cause to terminate the employment of Mr. Cheek. The incidents in 2009 do not satisfy the just cause standard. The Employer discovered them by happenstance.[10]

### STANDARD OF REVIEW

A party seeking to vacate an arbitration award faces a heavy burden, because the district court's jurisdiction is *extremely* limited: "[a] court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590-593 (6th Cir. 2004).[11] In deciding

---

[7]*Id.*, italics supplied.

[8]*Id.*

[9]*Id.*, italics supplied.

[10]*Id.*

[11]*Quoting Tennessee Valley Authority v. Tennessee Valley Trades and Labor Council*, 184 F.3d 510, 515 (6th Cir. 1999).

whether to confirm or vacate a labor arbitration award, courts must ask:

> Did the arbitrator act "outside his authority" by resolving the dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious" "improvident" or "silly" errors in resolving the merits of the dispute.

*Mich. Family Resources, Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 753

(6th Cir. 2007) (*en banc*).

Although pointing out that judicial consideration *of the merits* of an arbitrated dispute is the rare exception, the court also noted that an arbitration decision "could be so 'ignor[ant]' of the contract's 'plain language,' *Misco*, 484 U.S. at 38, 108 S.Ct. 364, as to make implausible any contention that the Arbitrator was construing the contract." *Id.* "Only when an arbitrator declines to confine himself 'to interpretation and application' of the agreement and instead opts to 'dispense his own brand of industrial justice' may the courts refuse to enforce an award." *Id*, at 751.[12]

## ANALYSIS

The Arbitrator's opinion is an excellent example of a "silly" decision. In his discussion of the "mitigating factors" militating against an outright discharge of Mr. Cheek, the Arbitrator refers to the lax supervision by ConAgra and the failure of any ConAgra

---

[12]*Citing United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 at 597 (1960).

personnel to periodically inspect Mr. Cheek's area of responsibility. This, of course, is tantamount to saying that ConAgra may not assume that its employees are honorable and trustworthy. Rather, the Arbitrator has concluded that ConAgra must *presume* that its employees are dishonorable and untrustworthy, and when one of them commits a rank act of dishonestly, the fault therefor falls upon ConAgra. Perhaps this reasoning could be applied to the supervision of inmates at a prison facility, but it is impossible to fathom how such a rationale should be applied to a business operation.

In the same vein, the Arbitrator posits that Mr. Cheek's thefts from his employer must be overlooked because no one ever told him to "cease and desist" from doing so.

Nevertheless, incredible silliness is not a basis for a court to overrule the decision of an Arbitrator. ConAgra and United Steelworkers contracted between themselves to have their disputes settled by an arbitrator rather than by a court. They have "hire[d] their own judge to resolve their disputes," *Id.*, 753, and they cannot be heard to complain of inane decisions. Their recourse is to hire better arbitrators in the future. *Id.*, 754.

But ConAgra asserts that the Arbitrator was guiltier of more than getting it badly wrong; it argues the Arbitrator's decision did not "draw its essence from the contract." *Id*, 752. Rather, so ConAgra argues, the Arbitrator substituted "his own brand of industrial justice" in place of a legitimate "interpretation and application" of the CBA:

> Only when an arbitrator declines to confine himself "to interpretation and application" of the agreement and instead opts to "dispense his own brand of industrial justice' may the courts refuse to enforce an award. Thus while the arbitrator may "look for guidance from many sources" in construing the agreement, "his award is legitimate only

so long as it draws its essence from the collective bargaining agreement."

*Id.*, 751 [*citing United Steelworkers v. Enterprise Wheel & Car Corp*., 363 U.S. 593 (1960).

Under Article V of the CBA, ConAgra had the *exclusive* right to terminate employees. The only limitation on that right was that any termination had to be for "just cause." Assuming that just cause existed, ConAgra's decision to fire an employee could not be questioned by anyone.

It is beyond argument that the question of whether specific conduct by an employee constitutes "just cause" for termination is an arbitrable issue. Notwithstanding that the Arbitrator found that Mr. Cheek stole time from ConAgra, he found that Cheek's conduct did not constitute just cause for his termination in light of the "mitigating factors" previously discussed in this report.

And that is where the Arbitrator should have stopped, but did not. After saying that there was no just cause for termination, he says that there *was* just cause for "some discipline." That discipline, in his opinion, was a substantial suspension. Accordingly, the Arbitrator "reduced" Mr. Cheek's termination to a "long suspension."[13]

Thus, as can be seen, the Arbitrator found no just cause in one breath, and then found it in the next.

Under the CBA, the Arbitrator had no authority to substitute his judgment for appropriate discipline for that of ConAgra's. The Arbitrator's role under the CBA was to

---

[13]Doc. 1-4, p. 5.

determine if there was just cause for termination. Thus the question: did he find just cause, or did he not? As far as the Rules and Regulations are concerned, could a given action by an employee constitute just cause for a suspension, but not for termination?

There is nothing inherently repugnant about having differing degrees of just cause; after all, this court deals with similar situations on almost a daily basis. Some criminal actions merit incarceration at the upper end of the guideline range, while others merit something far less. Here, at least *arguably*, the Arbitrator felt that Mr. Cheek's actions warranted something less than the maximum punishment. An argument could be made that this flies in the face of Article V of the CBA which grants to ConAgra the *exclusive* right to suspend or fire. But that argument could be made even if the Arbitrator said only that Cheek's actions did not constitute just cause for termination, and said nothing further.

ConAgra and United Steelworkers agreed to submit their labor disputes to private arbitrators, and the Supreme Court, and the Sixth Circuit Court of Appeals have made it clear that judicial intervention is the rare exception, warranted only when the Arbitrator's decision is "so 'ignor[ant]' of the contract's 'plain language,' *Misco*, 484 U.S. 38, 108 S.Ct. 364, as to make implausible any contention that the Arbitrator was construing the contract." *Id.*, at 753.

Under any judicial standard, this Arbitrator's decision was not only wrong and silly, it was amazingly so. But ConAgra and United Steelworkers agreed to submit their labor disputes to private arbitrators, and the Arbitrator's opinion arguably was premised upon his interpretation of the contract.

Lastly, ConAgra complains that the Arbitrator refused to consider, on the basis of irrelevancy, that Mr. Cheek possessed some rather disturbing items in some sort of "man cave" he created in one of his employer's buildings. Those items included pornographic magazines, videos; women's panties, photographs of himself with half-dressed women; condoms; a pillow; and a refrigerator. The Arbitrator declined to consider this evidence because Mr. Cheek technically was not terminated on account of this material.

ConAgra argues that the only reason the pornography and other items was not a basis for Cheek's termination was because "the theft of time was enough to justify the termination of [Cheek's] employment."[14] However, the fact remains that the basis for Cheek's termination was his theft of time, not his possession of the inappropriate materials in the workplace, as a result of which that was the only arbitrable dispute that then existed.

For the foregoing reasons, it is respectfully recommended that ConAgra's motion for summary judgment, (Doc. 16), be denied.

To the extent that United Steel's motion for summary judgment, (Doc. 18) asks that this court order that the Arbitrator's decision be enforced, it is recommended that the motion be granted. United Steelworkers, however, also asks that this court award prejudgment interest on the basis that ConAgra's challenge to the arbitration award was "without justification or [a] good faith legal basis."[15] This court does not agree that ConAgra's attack on the Arbitrator's decision was utterly lacking in justification and in bad faith. In fact, this

---

[14]Doc. 17, p. 15.

[15]Doc. 19, p. 13.

court finds quite to the contrary.  That portion of United Steelworker's motion for summary judgment  that requests a judicial award of prejudgment interest should be denied.

### RECOMMENDATIONS

(1) That ConAgra's motion for summary judgment, (Doc. 16), in which it asks that the Arbitrator's Award be vacated, be denied in its entirety; and

(2) That United Steelworkers's motion for summary judgment, (Doc. 18), be granted to the extent that this court order that the Arbitrator's Award should be enforced promptly, but denied to the extent that United Steelworkers requests an award of prejudgment interest on behalf of Mr. Cheek.[16]

Respectfully submitted,


_____s/ Dennis H. Inman_____
United States Magistrate Judge

---

[16]Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived.  28 U.S.C. § 636(b)(1)(B) and (C).  *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).